UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL ANTHONY PEAK                                      PETITIONER

V.                                                  NO. 3:07cv-233-H

PATTI WEBB                                               RESPONDENT

## MEMORANDUM OPINION

Petitioner, Michael Anthony Peak, is seeking a writ of habeas corpus pursuant to 28

U.S.C. § 2254. Fully briefed, this matter is ripe for a decision. For the reasons set forth below,

the Court will dismiss the petition. However, the Court will grant Petitioner a certificate of

appealability.

## I.

The facts underlying Peak's conviction and sentence are fully recounted in the Supreme

Court of Kentucky's decision on direct appeal, *Peak v. Commonwealth*, 197 S.W.3d 536, 541

(Ky. 2006). This Court presumes the state court's findings of fact to be correct. *See* 28 U.S.C.

§ 2254(e)(1). The Supreme Court of Kentucky recited the facts underlying Peak's conviction as

follows:

> Peak, Meeks and a third co-defendant, Bearden, were charged with murdering,
> robbing and conspiring to murder an unidentified victim following the discovery of
> his skeletal remains in a dry creek bed. Peak and Meeks were also charged with
> tampering with physical evidence. All three individuals were tried together.
> Bearden testified at trial against her two co-defendants and in exchange for that
> testimony the Commonwealth agreed not to seek the death penalty against her.
> Among other evidence, the Commonwealth also presented the incriminating taped
> statement Meeks gave to the police.
>
> The plan was soon put into action. Meeks obtained a gun and gave it to Peak.
> Bearden and Meeks then dropped Peak off at an abandoned farmhouse where Meeks

once lived.  Next, Bearden telephoned the victim and told him that she had a buyer
for his cocaine.  Having convinced him, she and Meeks transported the victim to the
farmhouse where Peak lay in waiting.  When the victim entered, Peak shot him
multiple times and stabbed him in the back of the neck.  After the victim was killed,
the three codefendants cleaned up the crime scene.  Peak, Meeks and a third
individual, Cissell, who was granted immunity in exchange for his testimony,
eventually disposed of the body of the victim in a dry creek bed.

Peak and Meeks were convicted of all the charges.  The only difference was that
Meeks was convicted of wanton murder and Peak was convicted of intentional
murder.  They were both sentenced to life in prison without the possibility of
probation or parole for twenty-five years for murder, twenty years for first-degree
burglary and five years for tampering with physical evidence.  Meeks was sentenced
to ten years for conspiracy to commit murder and Peak was sentenced to twenty
years for the same charge.  All the sentences were eventually ordered to run
concurrent by the trial judge.

*Id.* at 541.                                          **II.**

This case is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty

Act ("AEDPA") of 1996.  Under the AEDPA,

(d) An application for writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court
of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus
by a person in custody pursuant to the judgment of a State court, a determination of
a factual issue made by a State court shall be presumed to be correct.  The applicant
shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence.

28 U.S.C. § 2254.

The United States Supreme Court has interpreted the provisions regarding a state court

decision that is "contrary to" or an "unreasonable application of" clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, the Court determined that under the "contrary to" clause, a federal habeas court may grant a writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Id*. at 405. Under this standard, an unreasonable application is an objectively unreasonable application of the federal law set forth in decisions of the United States Supreme Court. A state court's ruling violates the "unreasonable application" clause "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id*. at 407. An unreasonable application can also occur where "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. Unreasonableness is an objective standard, and the fact that another court has applied the law in the same manner is not dispositive. *Id*. at 409-10. "Unreasonable" is distinct from "incorrect;" even if a state court incorrectly applies a rule of law, that error will not warrant habeas relief unless the application was objectively unreasonable. *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003). The Sixth Circuit has stated that "the district court could find the state court determinations unreasonable 'only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect,'" and its error "'would not be debatable among reasonable jurists.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).

Under the AEDPA, "clearly established federal law" means "holdings, as opposed to the dicta of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412. "'As is dictated by the statute, [reviewing courts] may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.'" *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004) (quoting *Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001), abrogated on other grounds by *Wiggins v. Smith*, 539 U.S. 510 ( 2003)).  Reviewing courts may consider such lower federal court decisions, however, to the extent that such decisions reflect review and interpretation of "'relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court case law.'" *Id.* (quoting *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003)).  In this Circuit, reviewing courts are "also bound by any prior Sixth Circuit decisions concluding that federal law on a particular issue has been 'clearly established' by certain holdings of the Supreme Court." *Id*. (citing Rule 206(c) of the Sixth Circuit Rules).  Even where the state court decision does not specifically cite to relevant federal case law, the deferential AEDPA review standard applies.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that the state court is not required to cite United States Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them").

### III.

Peaks raises only one claim in his habeas petition--whether the unredacted statement given by his co-defendant, Patrick Meeks, during their joint trial was improperly introduced against Peak in violation of his rights under the Sixth Amendment Confrontation Clause.

4

This case was complicated to say the least.  At the time of the trial in 2002, the victim, who had been killed in 1998, had yet to be identified.[1]  No murder weapon was ever found. There was no DNA evidence to link the defendants to the crime.  The only eyewitnesses to the crime were the three defendants.  Those three defendants, each represented by different counsel, were tried together before a single jury.  The trial court record in this case consists of nineteen VHS tapes each approximately six hours in length.  This Court has spent numerous hours reviewing the trial testimony in an effort to determine if the introduction of Meeks's statement violated Peak's Confrontation Clause rights.  After an exhaustive review of the record and relevant case law, this Court finds that Peak's Constitutional rights were not violated by the introduction of Meeks's recorded statement because Peak had the option of calling Meeks to the stand during the trial.

Meeks gave his recorded statement to police on the night he was arrested.  The statement implicated Meeks as well as Bearden and Peak in the murder.  Most damning, Meeks identified Peak as the triggerman.  Initially, Meeks indicated that he would not take the stand during the trial.  As a result, the Commonwealth planned to introduce the recorded statement.  Because the statement also implicated Peak, however, the parties agreed that it had to be redacted under *Bruton v. United States*, 391 U.S. 123 (1968).  The parties attempted to agree on a redacted version of the statement.  However, this proved nearly impossible.  When the redacted version was completed certain portions of it made it appear as if Bearden and Meeks acted alone and that Meeks had confessed to being the triggerman.  As a result, Meeks objected to the Commonwealth introducing his redacted statement claiming that it was a distortion of his

---

[1]In early 2008, the victim was finally identified as Miguel Angel Garcia from Freer, Texas.  *See* www.mysanantonio.com/news/MYSA041608_02B_Body_3640163_html2334.html.

5

confession.

This placed the trial court in an obvious quandary. The unredacted statement could not be introduced over Peak's objection if Meeks continued to assert his Fifth Amendment rights. Meeks objected to the redacted version because he felt that it made him appear to have been confessing to be the triggerman. In a last ditch effort to keep the redacted version of his statement out of evidence, Meeks decided to waive his Fifth Amendment rights. Even though Meeks was not technically unavailable due to his Fifth Amendment waiver, the prosecution played the statement to the jury without ever calling Meeks to the stand. Peak claims that this violated his rights under the Confrontation Clause.

On direct appeal, the majority of the Supreme Court of Kentucky rejected Peak's claim that introduction of Meeks's recorded statement violated Peak's rights under the Confrontation Clause. The majority reasoned:

> The trial judge made an inquiry concerning the waiver of Meeks' Fifth Amendment rights. The prosecution clarified with the trial judge that there was no agreement regarding Meeks testifying. The trial judge concurred with the parties that anyone involved could call Meeks as a witness subsequent to the waiver of his Fifth Amendment rights against self-incrimination.
>
> Following the testimony of the police office who interviewed Meeks, the Commonwealth played the taped interview. The Commonwealth moved to prohibit Meeks and Peaks from conferring with each other claiming the benefits of the separation of witnesses rule while contending that Peak was attempting to intimidate Meeks to prevent his testimony. The trial judge cautioned defense counsel concerning continued conferring between the two defendants.
>
> Every case involving multiple defendants raises the possibility that evidence which would be properly admitted in a trial of a single defendant would be improper in a separate trial of a co-defendant. Such evidence should be closely reviewed prior to admission because of the potential effect on a co-defendant. There is no question that the waiver by Meeks and the hearsay exception provided by KRE 801A(b)(1) would allow the statement to be admitted against Meeks.

Any Confrontation Clause analysis is fundamentally a question of whether the accused was allowed to be confronted with the witnesses against him.  U.S. Const. Amend. VI.  We require live testimony in court subject to adversarial testing. *Crawford v. Washington*, 541 U.S. 36 (2004).  Although cross-examination is a method typically used by counsel to tease out the truth of a matter, it is not the only method available.  *Id.* at 67.  Confrontation and not any particular formalized method of confrontation is how the determination of the reliability of testimonial statements is achieved.  *See id.* at 69, *Willis v. Commonwealth*, 716 S.W.2d 224 (1986).  "The Confrontation Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."  *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

The trial judge ruled in a manner that applied the hearsay exception rules properly and afforded Peak the opportunity to test the truth of the statement before the jury by calling Meeks as a witness.  He had no duty to call Meeks as a witness but certainly had the opportunity.  Had Peak called Meeks to the stand he could certainly have been called as a hostile witness.  He could then have been questioned with leading questions as if on cross-examination.  KRE 611(c).  Peak was present at the entire trial.  He chose not to avail himself of that opportunity and waived his right to confrontation.  *See Barker v. Wingo*, 407 U.S. 514 (1972).

Even if error arose, it was harmless, however, we need not determine whether harmless error analysis should be applied to this situation because there was no error. *Cf. Schneble v. Florida*, 405 U.S. 427 (1972).  In any event both defendants received a fair trial.

*Peak*, 197 S.W.3d at 544.

Justice Cooper joined by Justices Lambert and Scott dissented as follows:

I dissent from the affirmance of the conviction of Peak and would remand his case for a new trial because of a clear violation of the rule announced in *Crawford v. Washington*, 541 U.S. 36 (2004).

. . .

In *Crawford*, the United States Supreme Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."  *Crawford*, 541 U.S. at 68 (emphasis added).  The Commonwealth does not assert that Meeks's statement was not testimonial in nature.  "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Id.* at 68 (emphasis added).  In fact, the statement that required reversal in *Crawford* was also the product of a police

7

interrogation.  Meeks's statement violated both aspects of the holding in *Crawford*. Peak did not have a prior opportunity to cross-examine Meeks, and Meeks was not unavailable. "Even where the defendant had such an opportunity [to cross-examine], we excluded the testimony where the government had not established unavailability of the witness." *Id.* at 57.

The majority opinion suggests that Peak could have cured the error by calling Meeks as a witness during his case-in-chief and asking him about the statement.  Of course, it is not the obligation of a criminal defendant to cure a trial court error. Furthermore, Peak's case-in-chief would have been days later, and to call Meeks to the stand for the purpose of examining him about his statement would simply have reminded the jury of those statements that inculpated Peak.  Lastly, if Peak had called Meeks as his witness, it would have been on direct examination, and he could not have exercised that primary advantage of cross-examination, i.e., the right to ask leading questions. KRE 611 (c).  Instead, when the Commonwealth simply played the audiotape of Meeks's unredacted statements, Peak could not cross-examine Meeks at the time of its introduction because Meeks was not on the witness stand. The audiotaped statement was introduced during the testimony of a police officer.

The majority opinion seeks solace from a statement taken out of context from a footnote in *Crawford*, ante, at  (slip op. at 9), viz:

> The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

*Crawford*, 541 U.S. at 59.  At that point in the opinion, Justice Scalia was responding to concerns expressed in Chief Justice Rehnquist's dissenting opinion that the reliability of some out-of-court statements "cannot be replicated even if the declarant testifies to the same matters in court."  *Id.* (emphasis added).  Obviously, both Justice Scalia and Chief Justice Rehnquist were assuming that the declarant would testify, but the  Chief Justice believed that the prior statement might be more reliable than the in-court testimony. Immediately prior to this discussion, footnote 9 also states:

> Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.  *See California v. Green*, 399 U.S. 149 (1970).

*Id.*  The issue in *Green* was whether a testifying witness's prior inconsistent statement could be introduced during the witness's own testimony. The Court held that the statement was admissible under those circumstances. However, the Court also had some cogent things to say about the right of Confrontation:

Our own decisions seem to have recognized at an early date that it is this literal right to "confront" the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:

> "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237(1895).

Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

This conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement. Confrontation: (1) insures   that the witness will give his statements under oath--thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth" [citing 5 Wigmore § 1367]; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*California v. Green*, 399 U.S. 149, 157-158 (1970) (emphasis added) (footnote omitted).

Accordingly, I dissent from the affirmance of Peak's conviction and would remand his case for a new trial.

*Peak*, 197 S.W.3d at 551.

In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed

by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted

with the witnesses against him."  U.S. Const., amend. VI; *Pointer v. Texas*, 380 U.S. 400 (1965) (applying Sixth Amendment to the States).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

This Court begins its analysis with *Crawford v. Washington*.  The petitioner in *Crawford* was tried for assault and attempted murder in Washington state court.  The State sought to introduce a recorded statement that the petitioner's wife had made during a police interrogation as evidence that the stabbing was not in self-defense.  The petitioner's wife did not testify at trial because of Washington's marital privilege.  The petitioner argued that admitting the evidence would violate his Sixth Amendment right to be "confronted with the witnesses against him." Under *Ohio v. Roberts*, 448 U.S. 56 (1980), that right does not bar admission of an unavailable witness's statement against a criminal defendant if the statement bears "adequate 'indicia of reliability,'" a test met when the evidence either falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness."  *Id.* at 66.  The trial court admitted the statement on the latter ground.  The Washington State Supreme Court upheld the conviction. The United States Supreme Court reversed.  The Court observed that historically "testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Wahsington*, 541 U.S. at 59.  The Court then held that police interrogations fall into a category of "testimonial statements" that must be subject to cross-examination to be admissible.  The Court concluded its opinion by holding that "where testimonial statements are

10

at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.*

Although this case also involves a police interrogation, it is fundamentally different than *Crawford*. The witness in *Crawford* could not be forced to testify because of the martial privilege. In this case, however, Meeks indicated unequivocally that he was waiving his Fifth Amendment rights and would testify if called do so. Thus, Meeks was present and available to testify at trial. Based on its review of the applicable Supreme Court authority, this Court is convinced that the Constitution does not actually require the prosecution to call a witness to the stand in its case-in-chief to satisfy the Confrontation Clause. Rather, the Constitution simply requires that the witness must be made available for cross-examination.

Peak's counsel could have called Meeks and questioned him about the statement. Meeks waived his Fifth Amendment right and was ready to testify if called to do so by either side. As a matter of trial strategy, Peak chose not to call Meeks. The key consideration, however, is that it was Peak's choice not to question Meeks. In this Court's opinion, Peak's ability to have called Meeks is fatal to his Confrontation Clause argument. Placing a burden on the prosecution to do more than make the witness available for adversarial examination goes beyond what the Supreme Court cases dealing with the Confrontation Clause have required. Thus, this Court concludes that the Supreme Court of Kentucky's decision that Peak's rights under the Confrontation Clause were not violated was not an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States."

The Sixth Circuit Court of Appeals reached the same conclusion under somewhat similar facts. *Bailey v. Pitcher*, 86 F. App'x 110, 114 (6th Cir. 2004). A Michigan state-court jury

convicted Robert Lee Bailey of second degree murder and possession of a firearm during the commission of a felony.  Bailey was tried along with his co-defendant, Brown.  After his arrest, Brown gave a statement that implicated both himself and Bailey in the crime.  The two men were tried together before separate juries.  Both juries heard Brown's statement.  At the time the statement was read, Brown was still asserting his Fifth Amendment rights.  The state then rested its case against both defendants.  Bailey elected not to call any witness.  As such, his jury was dismissed.  At that time, Brown elected to waive his Fifth Amendment rights and testify in his own defense.  Bailey's counsel was then given the opportunity to request the return of the Bailey jury so that he could cross-examine Brown.  Bailey elected not to do so.  Bailey was convicted. After unsuccessfully appealing his judgment, Bailey filed a petition for habeas corpus in federal district court, challenging his conviction on Confrontation Clause grounds.  He claimed that the state court committed constitutional error by admitting Brown's out-of-court statement to Officer Harvel as substantive evidence without first affording him an opportunity to cross-examine Brown.  The federal district court rejected the claim.  In affirming the dismissal, the Sixth Circuit held that giving Bailey the opportunity to question Brown at some point in the proceeding was all the Constitution required.  The Sixth Circuit explained,

> The right of cross-examination secured by the Confrontation Clause does not demand that cross-examination actually take place or that it be allowed without limits. Rather, the defendant must be afforded an "opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, (1985); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (holding that prohibition of "all inquiry" into witness bias violated the Confrontation Clause).

> That "opportunity" was provided here. . . . Bailey in the end was faced with a straightforward choice.  On the one hand, he could allow his jury to remain in the courtroom while his lawyer cross-examined Brown on his confession but face the risk that Brown might say something even more damaging to his case. . . . This sort

12

of strategic choice does not violate the Confrontation Clause. When a state court gives the defendant an opportunity to cross-examine a witness and the defendant opts not to accept that opportunity as a matter of trial strategy, it does not offend the Confrontation Clause. . . . Because the trial court gave Bailey an opportunity to cross-examine Brown on his confession, we cannot say that the Michigan court's decision to admit the confession as substantive evidence was contrary to, or an unreasonable application of, clearly-established Supreme Court precedent.

*Id.* at 114.

 While this Court concludes that Peak's rights under the Confrontation Clause were not violated at his criminal trial, it nevertheless believes that Peak is entitled a certificate of appealability ("COA") in the event he wishes appeal this decision. 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A district court must issue or deny a COA and can do so even though the petitioner has yet to make a request for such a certificate. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) ("Whether the district court judge determines to issue a COA along with the denial of a writ of habeas corpus or upon the filing of a notice of appeal, the district judge is always required to comply with § 2253(c)(2)&(3) by 'indicat[ing] which specific issue or issues satisfy the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2)."). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Because the Court adjudicated Peak's claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.

Three Kentucky Supreme Court justices would have reversed Peak's conviction. Additionally, other courts presented with similar factual scenarios have reached a different conclusion than this Court. *See, e.g., Schaal v. Gammon*, 233 F.3d 1103, 1106 (8th Cir. 2000)

13

("A defendant in a criminal case, cannot be expected to bear the burden of taking affirmative action to make the State's use of the videotape constitutional."); *State v. Cox*, 876 So. 2d 932, 938-39 (La. App. 2004) ("Defendant should not be required to call Mrs. Sykes as a witness simply to facilitate the State's introduction of evidence against the Defendant. . . . Simply stated, if the State needed to have Mrs. Sykes' testimony to enable the State to introduce the statement into evidence, the State could have called Mrs. Sykes as a witness.")  These authorities persuade this Court that "reasonable jurists" could debate the correctness of its decision to dismiss Peak's petition.   As such, should he chose to do so, Peak should be allowed to appeal this Court's decision.

Date:  July 24, 2009

**John G. Heyburn II, Judge**
**United States District Court**

cc:      Petitioner, *pro se*
         Counsel of record
4412.008

14